UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**UNITED STATES OF AMERICA,**
       **Plaintiff,**

Vs.                              CASE NO.:  8: 19-CR-112-T-24AAS

**JOHN GELVER VALLECILLA SEGURA**
       **Defendant.**
_____/

## SENTENCING MEMORANDUM OF JOHN GELVER VALLECILLA SEGURA FOR NOVEMBER 19, 2019 AND SUPPORTING MEMORANDUM OF LAW

Now Comes Defendant, **JOHN GELVER VALLECILLA SEGURA ("SEGURA")**, files this Sentencing Memorandum and supporting Memorandum of Law and respectfully requests a departure(s) and downward variance(s) from the applicable Sentencing Guidelines range, and as required by applicable law, and says as follows:

### BACKGROUND

On or about June 5, 2019, the Defendant pled guilty pursuant to a plea agreement to conspiriring to possess with intent to distribute five (5) kilograms or more of cocaine in violation of 46 U.S.C. section 71503 (a) and 70506 (a) and (b).  In that plea agreement, the defendant admitted that and his co-conspirators attempted to smuggle approximately 730 kilograms of cocaine.

On or about March 3, 2019, while on a routine patrol, a military patrol aircraft (MPA) sighted the Defendant and his co-conspirators on a go-fast vessel ("GFV") approximately 82 nautical miles south of Malpelo Island, Colombia in the international waters of the Eastern Pacific Ocean.  The MPA aircrew observed packages of suspected contraband on the deck of the GFV.  The MPA also obtained video fottage of the GFVV which showed the Defendant and Co-

1

Defendant's on board, along with three outboard engines, two (2) GPS buoys, a covered cargo hold, and rectangular packages of suspected contraband concealed under the tarp near the middle of the vessel.

Thereafter, the MPA passed the description and location of the GFV to the U.S. Coast Guard Cutter (USCGV) Tampa, which was approximately 55 nautical miles from the GFV. The Tampa diverted to intercept the vessel, and eventually lauched its embarked helicopter and small boat to pursue the vessel.

Once on scen, the Coast Guard small boat gained positive control of the GFV, and embarked a boarding team.   The Defendant and Co-defendant's were identified as Columbian citizens, and Co-Defendant Juan Sebastian Cuabu identified himself  as the master of the GFC.

During the boarding, the boarding team located 25-30 fuel barrels on deck, limited fishing gear with no bait, catch or ice, and no navigation lights.  A search of the GFV did not yield any packages of contraband onboard, however the two (2) GPS bouys that were previously onboard the GFV and visble on footabe recorded by the MPA were not on the GFV.

The following day, while on routine patrol, an MPA observed a bale field approximately 105 nautical miles southwest of Malpelo Island, Columbia.  The Tampa diverted to intercept and got on station to find several bales of suscpected contraband in the water secured together with line and tethered to two GPS bouys where were identical  to the two GPS buoys visible in the MPA footage.  Thereafter, the 15 bales from the water, weighing approximately 730 kilograms, were recovered.  These bales tested positive for cocaine.

Mr. SEGURA was born in San Sebastian de Belar Casa, Columbia on March 12, 1995. (PSR DKT# 57 p 3).  He has no prior record or involvement with law enforcement prior to this case.  Mr. SEGURA grew up in extreme poverty in Tumaco, Columbia.   He lives in a home

with his wife and minor chld that has no running water or electricity. His youngest child, (Emely Joarce Vallecilla whose mother is Paulo Castillo) who is four years of age, sufferes from a heart condition and difficulty breathing (PSR DKT# 57 p 9). Mr. SEGURA wife is unemployed, and Mr. SEGURA makes only around $100 a month as a motorcycle taxi driver. Accodingly, they cannot afford to take their child to the doctor. Mr. SEGURA has only a 3d grade eduction. (PSR DKT# 57 p 9). His father, a farmer, was quite formal, expecting his oldest child to work in the field's with him to support both his family and his younger siblings. Asides from being physically abused by his father, if Mr. SEGURA did not work in the field as a young child, he would not be fed. (PSR DKT# 57 p 9).

    Mr. SEGURA was only going to received serveal thousand dollars for taking this terrible risk. The money was going to be used to financially assist his mother, child and girlfriend, specifically to buy vegitibles (PSR DKT# 57 p. 9). In addition to supporting his four year child, the Defendant takes care of a 10 year old step daughter (Natalie Escobar), for whom he is essentially the father.

    It is just a fact that Mr. SEGURA'sfamily is facing great financial needs, common in many of these cases. It is also true that Mr. SEGURA is relatively young, with no prior criminal history, and is the person that multiple people look too to provide support (Motther, minor children (2), and girlfriend). He recoginezes the gravity of his mistake, and he misses his family very much, and knows that they are suffering because of his poor choices. In spite of great fear of retilation against him and his family, Mr. SEGURA has done everything in his power to accept respoinisbility and to do what this court and our Nation might expect of one who is fully and completely rehabilitated. (PSR DKT # 57 p.7, subparagraphs 24 and 31).

    In short, Mr. SEGURA had a very difficult life, as reflected in the presentence

investigation report (PSR DKT# 57) Mr. SEGURA, based on his life circumstances, made a terrible and wrong choice committing a crime, which resulted in his arrest, for which he has accepted full and complete responsibility, (PSR DKT#57 p.7) *("The defendant has clearly demonstrated acceptance of responsibility for the offense")* and pled guilty pursuant to a plea agreement on July 2, 2019. (DKT# 50 and 52).

## DEFENDANT, JOHN SEGURA ARGUMENTS FOR DEPARTURES AND VARIANCES

As a result of the Supreme Court's decision in <u>United States v. Booker</u>, 543 U.S. 220 (2005), sentencing courts are no longer constrained solely by the federal sentencing guidelines and must now consider each of the factors enumerated in 18 U.S.C. § 3553(a) to fashion an appropriate sentence. An appropriate sentence is one that is "sufficient, but not greater than necessary" to comply with the purposes set forth in 18 U.S.C. § 3553(a) (2). <u>Kimbrough v. United States</u>, 552 U.S. 85, 101 (2007). The advisory sentencing guideline range is but one of many relevant factors in the sentencing court's determination of an appropriate sentence. 18 U.SC. § 3553(a).

### Relevant Sentencing Factors Under 18 U.S.C. § 3553

When determining an appropriate sentence under 18 U.S.C. § 3553, the Court must consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed – (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

4

(4) [the applicable Sentencing Guidelines]; . . .

(5) any pertinent [Sentencing Guidelines] policy statement . . .

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

For the factual basis, sentencing guidelines calculation, and relevant arguments for departure, please see the Presentence Investigation Report ((PSR DKT# 57). Additionally, post *Booker*, this Court can fashion any sentence that is sufficient to comply with the purposes set forth 18 U.S.C. 3553(A) (2) and discussed above.

### A. The Defendant is Safetfy Valve Eligble for waiver of the mandatory minimum Sentence

The First Step Act was made law on December 21, 2018. The First Step Act amended parts of 18 U.S.C. 3553 which has the affect of broadening the Safety Valve so it is allowing the court to depart from the applicable minimum mandatory sentences, with respect to Maritime Drug Law Enforcement Act (MDLEA) cases. Under Section 402 of the Act, as stated above, the application of the Safety Valve was broadened in include MDLEA cases. The provisions of Section 402 apply to "a conviction entered on or after the date of enactment of this Act." (Emphasis supplied) On September 19, 2018 this Court accepted the Magistrate Judge's report and recommendation of August 29, 2018 (DKT# 43) and entered an order accepting ALAVA TUFINO'S plea of guilty to Count I of the indictment, and adjudged ALAVA TUFINO guilty of the offense and then set sentencing for January 4, 2019. (DKT# 51). In the instant case, after the PSR was prepared, the President signed into law the historic bipartisan criminal justice reform known as the First Step Act (Act). Section 402 of the Act amended 18 U.S.C. § 3553(f) by

5

expressly extending safety valve eligibility to cases brought under the Maritime Drug Law Enforcement Act (MDLEA), 46 U.S.C. §§ 70503, 70506 (boat cases).

The "safety valve" provision at 18 U.S.C. § 3553(f) directs courts to impose sentences "without regard to any statutory minimum sentence" if the five conditions listed at § 3553(f)(1)-(5) are met. This means that if the five statutory conditions are met, there is no mandatory minimum term. The five statutory conditions are listed nearly verbatim at §5C1.2(a)(1)-(5). The defendant bears the burden of proving by a preponderance of evidence that all five conditions are met. See, e.g., *United States v. Zakharov*, 468 F.3d 1171, 1181 (9th Cir. 2006) ("[t]he defendant holds the burden of demonstrating by a preponderance of the evidence that he qualifies for . . . safety valve treatment"); *United States v. Johnson*, 375 F.3d 1300, 1302 (11th Cir. 2004) ("[t]he burden is on the defendant to show that he has met all of the safety valve factors"). Once the court finds that the conditions are met, the court has no discretion but to apply the guidelines without regard to the mandatory minimum. See, e.g., United States v. Myers, 106 F.3d 936, 941 (10th Cir. 1997); United States v. Real-Hernandez, 90 F.3d 356, 361-62 (9th Cir. 1996).

The Pre-Sentence Investigative Report does proved a two level reduction for in paragrarph 24 (PSR DKT # 57, p. 7) for "Specific Offense Characteristics" in accordance with Section 2D1.1(b)(18) which provides for a 2-level reduction if a defendant meets the requirements for the "safety valve" reduction set forth at §5C1.2(a)(1)-(5). See, e.g., *United States v. Torres-Landrua*, 783 F.3d 58, 62 (1st Cir. 2015). It should be noted specifically that the PSR and the facts of this case provide evidence beyond a preponderance that the Defendant has satisfied all five elements required to qualify for safety valve treatment.

*1. No more than one criminal history point:*

This criterion is met only if the defendant, by a straight application of §4A1.1, has nomore than one criminal history point. In the instant case, the Defendant meets this criteira.

*2. No violence or weapon:*

This criterion is met if the defendant did not possess a firearm in connection with the offense. In the instant case, no weapons were found on either the Defendant or his Co-Defendants.

*3. No death or serious bodily injury:*

There were no injuries associated with any party afflitated with this matter or with the Defendant or co-defendant's.

*4. No leadership role adjustment:*

It is important to note here that the Defendant's role in this was minor in terms of everyone else involved. The Pre-Sentence Report recoginizes this in its own report. The Defendant was not the master of vessel, and was not involved in the packaging or handling of the narcotis involved. Nor was the Defendant part of a contining criminal enterprise.

*5. Full and truthful disclosure:*

The final criterion is that the defendant make full, truthful disclosure to the government no later than sentencing. The Defendant has, to the best of his abilities, provided a complete disclosure to the government, to include enering a plea of guilty as charges, and his full admission to the facts of this case as provided by the United States.

**B. Downward Departure is warranted under U.S.S.G. § 3B1.2 (b); and also see U.S.S.G. § 2D1.1 (b) (18).**

The Presentence Investigation Report does not provide any reduction in the calculations at paragraph 26 for "Adjustment for Role in Offense." (DKT# 64, p. 7) A supplemental and

additional objection has been submitted to U.S. Probation and Parole and United States, on October 18, 2019.  After discussions with the author of the report, the Presentence Investigation Report (DKT#57 ) has not changed as to the Defendant's objection requesting a decrease in the levels applied for the downward "Adjustment for Role in Offense."

The Court is required to review the totality of circumstances in deciding on a minor role reduction. The Eleventh Circuit Court of Appeals addressed mitigating role adjustments in large quantity drug cases in *United States v. Carlington Cruickshank,* 837 F. 3d. 1182 (11th Cir. 2016).  The *Cruickshank* court clarified the Eleventh Circuit's prior ruling in *United States v. De Varon*, 175 F.3d 930, 945 (11th Cir. 1999) (*en banc*) which held § 3B1.2 does not automatically preclude a defendant from being considered for a mitigating role adjustment in a case in which the defendant is held accountable under 3B1.2 solely for the amount of drugs the defendant personally handled.  Apparently, some courts were under the belief that possession of a large quantity of drugs precluded a defendant from receiving a mitigating role adjustment.  However, in *Cruickshank,* the court reiterated its' position in *De Varon* that "the district court must assess all of the facts probative of the defendant's role in her relevant conduct in evaluating the defendant's role in the offense." *Cruickshank, Id.* at 1193, *citing De Varon,* at 943.

The *Cruickshank* Court also noted the Sentencing Commission, through Amendment 635 to the Sentencing Guidelines, adopted amendments to the Sentencing Guidelines further clarify the factors for a court to consider for a minor-role adjustment, and, in doing so, still continue to embrace the approach the Eleventh Circuit took in *De Varon*. *Id.* at 1194.[1] Also

---

[1] In November 2015, the Commission added the following language to Application Note 3(C) for § 3B1.2:
In determining whether [a defendant warrants a minimal or minor participant]  or   an intermediate  adjustment,  the  court  should  consider  the following non-exhaustive list of factors:

8

See, <u>USA v. Colorado</u>, 716 Fed. Appx. 922 (Nov. 28, 2017 11th Cir. Unpublished opinion) (Totality of Circumstances must be considered) A *minimal* participant is a defendant who "plays a minimal role" and is intended to cover defendants who are "plainly among the least culpable of those involved in the conduct of a group." U.S.S.G. § 3B1.2 (b), comment, (n. 4). A minimal participant is eligible for a 4-level decrease.

A *minor* participant is a defendant who is "less culpable than most other participants, but whose role could not be considered as minimal." USSG § 3B1.2 (b), comment (n.4).[2]  Also see; U.S.S.G. § 2D1.1 (b) (18).   If the defendant meets the criteria set forth in subdivisions (1)– (5) of subsection (a) of § 5C1.2 (Limitation on Applicability of Statutory Minimum Sentences in Certain Cases), decrease by **2** levels. Applying the 5 factors in the instant matter, the burden of showing a role reduction has been satisfied. Mr. SEGURA was one of three mariners on a Go-Fast boat.  He was not the planner or mastermind. He was merely a minor cog in a larger operation.  It cannot be said that Mr. SEGURA did not participate in the endeavor, or that his role was minimal under the circumstances.  However, his role was relatively minor in that he was merely assisting in the transportation of the narcotics as a mariner, and he was to receive a miniscule payment, most of which he never received, or was kept by the individual who hired him as finder's fee.  He  had  no  proprietary interest in the drugs, and was paid a pittance in comparison to the market value of such a large number of drugs.  As well he did not set up this

---

(i)  the degree to which the defendant understood the scope and structure of the criminal activity;
(ii)  the degree to which the defendant participated in planning or organizing the criminal activity;
(iii) the degree to which the defendant exercised decision- making authority or influenced the exercise of decision- making authority;
(iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;
(v)  the degree to which the defendant stood to benefit from the criminal activity.

[2] One who falls in between the two is entitled to a 3-level reduction.  U.S.S.G. 3B1.2 "In cases falling between (a) and (b), decrease by **3** levels."

maritime drug trafficking venture. Based upon the foregoing, respectfully, a minor role reduction should be granted to Mr. SEGURA, under the particular facts of this matter.

### C. At the time of this filing, a 5K1.1 Motion is anticpated

At the time of this filing, and based on converstation with the United States, the Defendant anticipates having earned a 5K1.1 motion which would be filed on behalf of the United States with respect to Mr. Segura pursuant to Section 5K1.1 of the USSG and Title 18, United States Code, Section 3553 (e). The amount of the reduction, if any, is not known at this time.

### D. Mr. Segura's history and characteristics warrant a downward parture/variance.

The Government has agreed to recommend the low end of the Guidelines range, wherever that should turn out to be, as set forth in paragraph 9 of the Plea Agreement. (DKT# 29 p. 5). This Court should vary downward from that point to further reflect Mr. SEGURA's history, and characteristics. To be sure, the nature of this offense and the quantity of drugs involved implicate the need to punish, deter, and incapacitate. However, those needs are mitigated in this case by Mr. SEGURA's circumstances and motivation for committing the offense. As for punishment, Congress requires this Court to consider "just punishment." Mr. SEGURA, as stated and acknowledged above, made a terrible decision, one clouded by the need to support love ones, includidng a minor child with severe medical disabilities (Emely Joarce Vallecilla), the dire economic situation he faces on a daily basis, and the need to support his mother, girlfriend, and the two children that depend upon him for their support. (See DKT# 57, p. 9) While his motivations do not excuse his actions, they do lessen the

degree of his culpability, and his totality of his conduct both before and after the criminal conduct, support departures and variances in this case.

A downward variance is also warranted to reflect Mr. SEGURA's lesser role in the larger scheme. While the minor-role adjustment accounts for this to some extent within the Guidelines range, it expressly does not consider those actors within the scheme that are not discernible or identifiable from the evidence, or involved in conduct outside of the defendant's relevant conduct. *United States v. Rodriguez De Varon*, 175 F.3d 930, 944 (11th Cir. 1999). In considering the statutory sentencing factors under 18 U.S.C. § 3553, however, this Court is not so limited. Mr. SEGURA is a bit player in the complex web of criminality, greed and corruption in the drug scourge that has impacted people in all walks of life, and that has its genesis in the South American drug trade. A mariner who has never before been at sea prior to this incident, such as Mr. SEGURA, on a small boat decreases to a certain extent his culpability and the amount of punishment that is "just." As to deterrence, a smaller or lesser punishment would certainly deter Mr. SEGURA who living a difficult life indeed, under severe economic strain, avoided any criminal conduct for most of his 24-year life, except for this criminal act for which he appears before this Honorable Court, and for which he has accepted complete and full responsibility.

It is not unreasonable to suggest that this act was out of character for Mr. SEGURA. What is being requested is that the court considers a sentence that both reflects the seriousness of the offense committed, promotes the respect for the law, but provides a just punishment to someone who has never run afoul of those very pillars. Indeed, a harsh sentence does nothing to deter one who is already deterred and frankly, fully rehabilitated. Such a punishment punishes the U.S. taxpayer more then it dispenses justice to the

Defendant. While the Defendant needs to be punish, such punishment should not more then necessary to get the point across to the Defendant that his action are not acceptable and cannot occur again in the future.

In short, the sooner Mr. SEGURA is able to complete his sentence and return to his family is a sentence that serves both the United States, its Citizens, Mr. SEGURA, his family, and the overall tenants of justice.

Accordingly, a overall sentence no greater than 48 months is more then sufficient to create both specific and general deterrence, and to ensure that justice is done with firmness and mercy. A following sentence of five years of supervised release will also act as a specific deterrence to ensure that these activities never happen in the future.

**E. Additional Matters for the Court's Consideration for Departures and Variance**

In conclusion, the undersigned would request that this Honorable Court consider that Mr. Segura be considered for, and that a recommendation be made to the Bureau of Prisons for (i) Mr. SEGURA to participate in an ESOL class; (ii) that Mr. SEGURA be allowed to participate in a training or vocational program training as an electrician or other similar trade or vocation; (iv) and, that Mr. SEGURA be considered for the 500 hour Residential Drug Abuse Program (RDRAP) or other substance abuse program; and (vi) Mr. SEGURA serve his sentence at Coleman Florida FCI.

**WHEREFORE** the Defendant, JOHN GELVER VALLECILLA SEGURA, prays this Court will grant the relief sought herein, and make a departure from and also grant a variance downward to the lowest end of the applicable Guidelines Range, and as required by applicable law, and below the minimum mandatory sentence, and also consider a recommendation to the Bureau of Prisons that Mr. SEGURA be considered for ESOL class and that Mr. SEGURA be allowed to

participate in a training or vocational program training as an electrician or other similar trade or vocation, and the other items and requests referenced above, in this Sentencing Memorandum.

DATED this 4th day of November, 2019.

Respectfully submitted,

*Patrick N. Leduc*
Patrick N. Leduc  0964182
4809 E. Busch Blvd., Ste. 204
Tampa, FL 33617
813-985-4068
813-333-0424
Florida Bar #0964182
Attorney for Defendant

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY, that a true and correct copy of the foregoing Motion to Continue was filed with the Clerk of the Court and was sent via U.S. Mail to the United States Attorney Office at 400 North Tampa Street, Suite 3200, Tampa, Florida 33602, and ECM to the Assistant United States Attorney, Mr. Nicholas DeRenzo, on this 4th day of November 2019.

*Patrick N. Leduc*
Patrick N. Leduc  0964182
4809 E. Busch Blvd., Ste. 204
Tampa, FL 33617
813-985-4068
813-333-0424
Florida Bar #0964182
Attorney for Defendant